LEVY, APPELLANT, *v.* COON, APPELLEE.

(No. 7626—Decided December 8, 1964.)

*Mr. James W. McGuire* and *Messrs. Lane, Huggard & Alton,* for appellant.

*Messrs. Dresbach, Crabbe, Newlon & Bilger, Mr. Charles E. Brown* and *Mr. James L. Graham,* for appellee.

TROOP, J. This action was begun in the Court of Common Pleas of Franklin County. It arose out of a collision between a Mercury automobile driven north on Wilson Avenue, in the City of Columbus, by the defendant, Coon, and an unmarked Chevrolet police car, owned by the City of Columbus, in which the plaintiff, Levy, was riding, being driven west on Mound Street. The accident occurred at the intersection of the two streets.

The case was tried to a jury. At the time the case was submitted to the jury the trial court held that the defendant was negligent as a matter of law and that his negligence was the proximate cause of injuries to the plaintiff. The trial court so instructed the jury, directing them to find for the plaintiff. In fact, the trial court submitted only one form of verdict to the jury. Apparently defendant acquiesces in this point, raising no objection to the holding either in brief or oral argument. A verdict of $500, favorable to the plaintiff, was returned by the jury, judgment was entered accordingly and later plaintiff's motion for a new trial was overruled. It is from the judgment and final order of the trial court that this appeal is taken on questions of law.

Four assignments of error are urged by the plaintiff-appellant, that the trial court erred in overruling plaintiff's motion for a mistrial, in the admission of certain evidence objected to by plaintiff, and in overruling the motion for a new trial, and finally, that the judgment rendered was inadequate and against the weight of the evidence as to amount.

Much of plaintiff's argument, both oral and in brief, in support of the first two assignments of error, centers about a question directed to Dr. Beattie, inquiring as to payment of his medical bill, for treatment rendered the plaintiff, by the Industrial Commission of Ohio, and the presentation in evidence of a claim, made to the Industrial Commission, arising out of an accident to the plaintiff in 1957. Objection is most strongly urged against the display before the jury of a volumin-

ous file, covering the 1958 accident, and the claim arising therefrom, to establish the 1957 claim. It is noted that objection to the question concerning payment of the medical bill was sustained and no answer permitted.

It is strongly urged that it was irregular to ask the question of Dr. Beattie because counsel for the defendant-appellee, who asked the question, knew that the plaintiff was entitled to recover his medical expenses under the law of Ohio, even though he had been reimbursed for them. In his own behalf counsel for the defendant takes the position that the collateral source rule in cases involving payments from the Industrial Commission of Ohio is unsettled, and being so, he was entitled to ask the question. To resolve the question presented we examine the rule as applied in Ohio using such material as is available.

The case of *McDowell* v. *Rockey* (1929), 32 Ohio App. 26, has a fact pattern closely resembling the one in the instant case. Plaintiff, a salesman, was injured due to the negligence of a defendant innkeeper who sought to avoid or reduce his liability because the plaintiff had been paid from the State Industrial Compensation Fund. Basing its opinion upon the case decided by the Supreme Court, *Trumbull Cliffs Furnace Co.* v. *Shachovsky* (1924), 111 Ohio St., 791, the court held, at page 30, as follows:

"* * * the workmen's compensation allowance is an occupational insurance, and, like general insurance, cannot be deducted and treated as an offset for claims for damages in an action by an injured employee against a third party who caused his injury."

The *Trumbull Cliffs Furnace Co. case, supra,* which appears to be a principal case, is not identical in fact pattern with the instant case nor with the *McDowell case, supra,* which the court relies upon. In *Trumbull,* the negligent third party is also an employer and contributing member of the workmen's compensation system. In the syllabus, the emphasis in the holding of the court is on the conclusion that the third party, the owner of the premises, is not the employer of the injured workman employed by the independent contractor. At page 796, however, the language of the court provides the foundation for the rule followed in the *McDowell case, supra.* It is as follows:

"'* * * the compensation provided by the Workmen's Compensation Law is in the nature of an occupational insurance, and, like general insurance, cannot be deducted and treated as an offset for claims for damages for wrongful injury or death. * * *''

A decision by the United States District Court, E. D. Wisconsin, in *Powell* v. *Wagner, Exr.* (1959), 83 Ohio Law Abs., 158, assumes that the rule is clearly established in Ohio by the *McDowell case, supra.* The court first generalizes saying that in the absence of subrogation the only parties concerned with an accident insurance policy are the beneficiary and the insurer, and that the insurer cannot look to the insured or the tort-feasor for reimbursement. Further, then, the court observes that neither Ohio nor Wisconsin has by legislation provided for the right of recovery, by subrogation, for payments made under Workmen's Compensation and then, at page 160, states the rules as follows:

"Where the Ohio courts treat Ohio Workmen's Compensation awards as general insurance and do not permit such payments as offsets to the liability of the tort-feasor, and where Wisconsin similarly treats payments received either gratuitously or pursuant to insurance coverage, the workmen's compensation awarded to plaintiff herein does not inure to the benefit of the defendants and may not be considered to diminish the amount awarded by the jury."

Unless and until the *Trumbull* and *McDowell cases, supra,* are overruled by the Supreme Court, they represent, in Ohio, the collateral source rule as applied to workmen's compensation payments and control in the instant case. In 16 Ohio Jurisprudence (2d), 256, Section 119, the text authors suggest that the collateral source rule is "well settled" in Ohio as to insurance payments and the same rule is held to apply "to compensation awarded under the Ohio Workmen's Compensation Law" and that recovery against the person causing the injury is not to be reduced by any payments or awards made under the act.

The author of an article in Vol. 21, the Ohio State Law Journal (1960), page 238, suggests that Ohio follows the general rule when he says:

"Compensation awarded under workmen's compensation laws are not available generally in mitigation of damages to the tort feasor under the collateral source rule. * * *''

The article suggests also the philosophy underlying the rule. At page 240 it reads as follows:

"* * * It is true, in many cases, that a double recovery is thus permitted by the liberality of the courts in interpreting this rule, but this is consistent with the view of our courts that it is better to permit the claimant to 'accumulate his remedies' than to grant the tort feasor the benefits of payments that come to the claimant from 'collateral sources.' The wrongdoer, the courts feel, is not entitled to such an 'undeserved windfall.' "

Counsel for defendant defends his position in directing the controversial question to Dr. Beattie by arguing that the collateral source rule relative to workmen's compensation awards is unsettled in Ohio. We have flat-footedly held that it is not unsettled but established by the decision in the *Mc-Dowell case, supra*. What then is the effect of the asking of the question? It is recalled that objection was made to the question which was sustained and the question remained unanswered.

The federal court in his decision in the *Powell case, supra*, infers that Section 4123.93, Revised Code, covers the matter and says, page 159, that "hospital and medical expenses, may not be called to the attention of or be considered by the jury in a personal injury action." That section covers only actions in workmen's compensation claims. The language used limits references to matters covered in "Sections 4123.01 to 4123.94, inclusive, of the Revised Code." It says:

"* * * the amount of compensation, shall not be considered by, or called to the attention of, the jury on the trial of any action to recover damages as provided in such sections."

This is not an action "provided in such sections," and therefore, the prohibition contained in Section 4123.93, Revised Code, is not controlling. It would be a much simpler situation if we could draw upon the statutory rule and not be left to the application of general rules.

In the case of *DeHart, Admx.*, v. *Ohio Fuel Gas Co.* (1948), 84 Ohio App. 62, plaintiff offered two photostatic copies of records of the Industrial Commission of Ohio for admission into evidence. They were admitted by the trial court over objection. The appellate court held, at page 70, "that these were irrelevant and incompetent and should not have been received." Such a holding suggests how dangerously near to committing

prejudicial misconduct counsel may be when he simply asks a question bringing workmen's compensation within the periphery of the jury. Especially is that so when it is clear that the rule in the *McDowell case, supra*, is applicable.

The most helpful reference in this particular matter is found in 77 A. L. R. (2d), beginning at page 1154. The section deals with the prejudicial effect of bringing to a jury's attention the fact that a plaintiff has received, or is entitled to receive, compensation awards for personal injuries that are likewise the subject of the instant suit. In general, say the text authors, such a reference has been held to constitute error, requiring a reversal or a new trial. It is equally clear from the article, and the included references, that much discretion is given the trial courts and that certain circumstances justify finding an absence of prejudice.

Where does Ohio fall in the gamut of possible approaches? In the *DeHart, Admx., case, supra*, we find a possible clue. As noted, the Industrial Commission material was held to be irrelevant and incompetent, but admitting it was not held to be prejudicial. The clue as to the basis of that conclusion is found at page 70. The court held that the records should not have been received, and then adds:

"* * * but, from a survey of the whole record on this subject, that the defendant was not prejudiced by them."

The trial court in the case before us refused to grant a motion to declare a mistrial and later refused to grant a new trial. It is appropriate to say especially in the matter of the motion for a new trial that the trial judge is in the best position to determine whether the verdict was probably influenced by the reference to workmen's compensation or not. It is one of those situations where his decision as to whether the matter was prejudicial should not be disturbed unless it is a situation plainly and clearly prejudicial. See 77 A. L. R. 2d, 1159, Section 3 (b), and page 1160, Section 4.

As well as sustaining the objection to the controversial question, which remained unanswered, the trial court gave a clearly curative instruction as to the right to recover for medical payments even though the cost was not paid by the plaintiff. The special instruction was offered by the plaintiff and reads as follows:

" 'I charge you, members of the jury, that under the law

of Ohio, the plaintiff, David Levy, is entitled to recover for any medical expenses arising out of treatment for his injuries, regardless of whether he paid said bills or whether they were paid by some other person or agency, provided that the treatment was necessary, and the injuries for which said treatment was given were the proximate result of the accident of August 15, 1958 at Mound and Wilson Avenue.' "

See 77 A. L. R., 1161, Section 5.

Further, it is noted that counsel for the defendant did not persist in repeating his question to the witness when objection was made and sustained. Clearly he was not guilty of the kind of misconduct that produces the need "for strong admonition by the trial judge." 56 Ohio Jurisprudence, 722, Section 295. Even this rigid rule suggests "admonition" and not the immediate granting of a mistrial.

Improper questions are the subject of some text materials. 56 Ohio Jurisprudence (2d), 722, Section 296, summarizes as follows:

" * * * A question, even though improper, if not shown to have been answered by the witness to whom it was put, is not ground for reversal but if the admission of the evidence brought out by the question is prejudicial, the failure to rule out the question is, of course, error. * * *"

Ohio Jurisprudence relies upon 58 American Jurisprudence, 321, Section 573, as follows:

"The mere fact that an improper question has been put to a witness is not ground for reversal where no harm has resulted. Thus, an improper question allowed by a court over objection is not ground for reversal where the answer is favorable to the objecting party, or not adverse to him, where the question is not answered, or where the court sustains an objection to the answer. * * *"

In the instant case the trial court sustained an objection to the question, or at least to a possible answer, and consequently no prejudice resulted.

An examination of the whole record is made necessary in order to determine possible prejudicial effect of the improper question and to appraise plaintiff's fourth assignment of error. Counsel, in his brief, says that for the purposes of the appeal he is "forgetting about the operation and the complaints of

Levy after the December 1959 lifting incident." He insists that considering only the period from August 15, 1958, to December 1959 that the verdict of the jury is so grossly unfair that the judgment of the trial court should be reversed..

However counsel may seek to restrict the scope of this review, it must be remembered that the whole record was before the jury. It is impossible, and perhaps without purpose, to attempt a review or digest of the entire record. Several pertinent points only are, therefore, emphasized. Eight accidents in which the plaintiff was involved were brought out in evidence. Briefly summarized, the record is as follows:

(1) 1949—Plaintiff was thrown out of a car on the River Road.

(2) 1954—Car in which plaintiff was riding went into ditch knocking down telephone pole.

(3) 1956 or 57—Auto accident at Whittier and Jaeger Streets.

(4) 1957—Plaintiff pulled a muscle while carrying a stretcher at Grant Hospital.

(5) August 15, 1958—The accident involved in the instant case.

(6) December 26, 1959—An incident at the Workhouse in which plaintiff hurt his back while subduing a prisoner.

(7) 1959 or 60—Plaintiff felt some hurting in his back while on police duty and in the act of "covering" a house on the South Side.

(8) June 1962—Plaintiff lifted a small boy who was sitting on a stool which resulted in pains in the lower back.

It is difficult to restrict the consideration of this court to the period August 15, 1958, to December 26, 1959, and certainly the jury was not so limited, with such a basic accident record as is set out above.

The history of the plaintiff was a matter of consideration for the doctors who testified at the time of the trial as shown in the record. It is a part of the record that the plaintiff had surgery on October 31, 1962, for the removal of a ruptured disc in his lower back. The cause that required the surgery was one of the pieces of information sought in the examination and cross-examination of the doctors.

Dr. Beattie, the plaintiff's physician and the plaintiff's

medical witness, was asked if he knew of the plaintiff having sprained his back (July 11, 1957) a year before the accident which is the basis of this case. He replied that he had no such history. In response to a question inquiring as to the possible effect of that injury, Dr. Beattie replied as follows:

"It could have been an initiating factor in this particular man's case. * * *; this man showed progressive trouble and as a matter of fact he had had a subsequent injury in his work."

A further question was directed to Dr. Beattie as follows:

"In his case can you pinpoint any one thing, we are talking about Mr. Levy, and could you say with a reasonable degree of medical certainty this one thing caused his disc?"

The answer is as follows:

"I can't say definitely, no. I mean I cannot say that this is the ultimate cause of the turn of events which were started."

The observations and conclusions of plaintiff's own physician are reinforced by the testimony of Dr. Kubiac, called by the defendant. Dr. Kubiac examined the plaintiff approximately one year after the accident which took place on August 15, 1958. He stated his conclusion as to the condition of the plaintiff, at the time of examination, as follows:

"Well, the conclusion which I came to at that time was that you had to assess this man's disability on what he told you rather than being able to detect any abnormalities by examination.

"He said that he still had some discomfort and I found no demonstrable evidence for this discomfort when I examined him. I think that that means if you would consider the period of time which had elapsed from the accident one would be safe in feeling that he had made a recovery from whatever happened to his back at that time, * * *."

Dr. Kubiac further testified, after a second examination of the plaintiff, that it would be difficult to determine what injury was responsible for the operation on his back, specifically saying as follows:

"I would certainly tend to feel as I did when I examined this man that there should have been some incident happen recently near the time that he developed this weakness in his foot that was responsible for causing the disc to protrude."

Other bits of testimony urge consideration which provide

some substantiation of the jury's verdict. Plaintiff was examined by the police department doctor and removed from light duty, and plaintiff said that his physical condition had not prevented promotion. The reliability of the plaintiff as a witness, always a question within the province of the jury, could well have been doubted when he, as shown in the record, told Dr. Kubiac, at the time of the original examination, that he had never injured his back prior to the accident in question. Plaintiff's evasiveness when questioned about his signature to his second amended petition could produce an unfavorable feeling as to his trustworthiness. When asked if his signature appeared on the pleading, he answered "I don't know," and finally left the matter to his attorney to say.

Having examined the complete record in the case before us with considerable care, it remains to suggest the applicable law. A basic general rule comes from the case of *Gedra* v. *Dallmer Co.* (1950), 153 Ohio St., 258, as follows:

"3. * * * if the cause of an injury to a plaintiff may be as reasonably attributed to an act for which defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of showing that his injury is a proximate result of the negligence of the defendant."

Of course, in this case the trial court instructed the jury that the defendant was negligent as a matter of law and that he suffered some injury. The corollary to the basic rule seems clear, the plaintiff must likewise sustain the burden of proving the extent of his injuries arising from the particular act of negligence alleged. The extent of the injury is a question for the jury.

This court, then the Second District, contributes two rules of law which must be considered here. They are contained in headnotes one and two to the case of *Barnett* v. *Hills* (1947), 50 Ohio Law Abs., 208, as follows:

"In a personal injury action, the existence of a conflict in medical testimony offered by plaintiff and defendant respectively presents a question solely for the determination of the jury.

"The verdict, in a personal injury action, should not be disturbed by a reviewing court as against the weight of the evidence if such verdict is supported by any competent, credible

evidence, even though the reviewing court might, if acting as original triers of fact, have reached a different conclusion."

The record shows some conflict in medical testimony although it can be equally well said that at some points the testimony of the doctors is complimentary. Nevertheless, the jury question persists. However unpalatable the voluminous file from the Industrial Commission, it must be said that the rest of the record presents sufficient credible evidence to support the conclusion reached by the jury, and therefore, this reviewing court has no basis for reversing the verdict the jury returned.

Counsel for the appellant seeks to prove the inadequacy of the jury's verdict on the ground that they allowed the medical bill of $439.50, which means to counsel that they gave the plaintiff only $60.50 for his injuries and pain and suffering. By this reverse method of calculation counsel seeks to bring this case within the range of *Sherer* v. *Smith* (1949), 85 Ohio App., 317. In that review the court found that by simply adding hospital and medical bills to loss of wages and property damages the inadequacy of the verdict was demonstrated.

In the case before us, the trial court told the jury that they had but a single task, to determine the amount of the damages to be awarded to compensate for "some injury at such time to the plaintiff." The court then directed as follows:

"In awarding damages you may consider only injuries, disabilities and damages as are shown by the preponderance of the evidence as being the proximate result of the collision of August 15, 1958."

The court amplified by adding that they were to determine what injuries the plaintiff received. The jury awarded a flat sum in response to those directions. The record before them affords sufficient credible evidence for them to have done so. In no sense is a calculation possible as is true in the *Sherer case*, *supra*. More properly, our case falls within the rule announced by the Ninth District Court of Appeals in *Hermann* v. *Peters Cafeteria, Inc.* (1937), 24 Ohio Law Abs., 290, as follows:

"In cases of personal injury, where the amount of the verdict cannot be arrived at by any mathematical computation but is a result of the composite opinion of the jury, and where the facts do not justify a finding that the jury was actuated by

passion or prejudice, and the verdict is not so small as to necessarily imply the influence of passion or prejudice, the reviewing court can interfere only on the ground that the damages awarded are so inadequate as to justify the court in finding unanimously that the verdict in that regard is manifestly against the weight of the evidence."

Nothing in the record, nor in the conduct of the trial, suggests passion or prejudice as motivating the jury, nor is there ground to imply it, and there is too much credible evidence before them to hold that the verdict rendered is manifestly against the weight of the evidence.

The unanswered question directed to the doctor and the use of the Industrial Commission file in the trial of this case are irrelevant and incompetent. Being so, it should be obvious how precariously close to prejudicial error counsel may come in the asking of an improper question or in the use of irrelevant documents. Only a record intensely favorable to the offender will avoid reversal.

In the instant case, the verdict is not manifestly against the weight of the evidence. On the contrary, there is ample credible evidence to support the jury's verdict. Giving to the trial court the range of discretion to which he is entitled in the admission of evidence and in his consideration of the motion for a mistrial and the motion for a new trial, we find no abuse of discretion and no prejudicial error.

The judgment of the trial court is affirmed and this appeal dismissed at appellant's costs.

*Judgment affirmed.*

BRYANT, J. (presiding), and DUFFEY, J., concur.

DUFFEY, J., concurring. A defendant's insertion of a collateral source payment is directly analogous to a plaintiff's insertion of a defendant's insurance coverage. In neither instance can the law afford a rigid rule that any reference, inadvertent or otherwise, under any circumstances necessarily requires a mistrial. On the other hand, such an insertion is a serious matter. Upon a review of the record, I rather reluctantly concur that prejudicial error was not shown.