HUNT, Appellant,

v.

MAYFIELD, Admr., et al., Appellees.

[Cite as *Hunt v. Mayfield* (1989), 65 Ohio App.3d 349.]

Court of Appeals of Ohio,
Montgomery County.

No. CA 11364.

Decided Nov. 22, 1989.

*E.S. Gallon & Assoc.* and *Deborah J. Adler,* for appellant.

*Cowden, Pfarrer, Crew & Becker* and *Gary T. Brinsfield,* for appellees.

ROBERT P. RINGLAND, Judge.

In this opinion we are asked to consider several evidentiary questions concerning the admissibility of certain hospital records and testimony based on those hospital records. For the reasons stated below, we reverse the trial court's decision.

## I

### Posture of the Case

The fact statements supplied by the parties to this appeal are rather sparse. As nearly as we can determine, appellant worked for General Motors Corporation for approximately twenty-two years. Appellant first worked for Frigidaire, a subsidiary of General Motors. Following the sale of Frigidaire, appellant continued his employment with General Motors at the truck and bus assembly plant. Appellant initially worked as an assembler on the line. He apparently suffered a minor back injury for which he did not file a workers' compensation claim.

In 1985, appellant went to work on the second shift as a sweeper. His responsibilities included cleaning restrooms and offices, and stacking skids. On December 16, 1985, appellant was asked to clean the loading dock area. As part of cleaning in this area, appellant had to sweep under railroad cars. Apparently, appellant jumped on and off the dock frequently. On the first day of his assignment to the loading area, appellant allegedly injured his lower back. However, appellant did not take time off from work or consult a doctor. Rather, appellant continued his regular duties until after the Christmas holidays when appellant was sent to a doctor by his foreman.

On January 9 or 10, 1986, appellant consulted his personal physician at the Family Practice Center. The record indicates appellant had been treated by Drs. Stratton and Aggarwal following a work-related injury in 1983. The doctors initially treated appellant with analgesics. Approximately three weeks after his initial visit to the Family Practice Center, Dr. Aggarwal sent appellant for tests on his lower back. The test results indicated that appellant was suffering from a herniated disc in his lower back. This injury was subsequently surgically corrected. Appellant did not file a workers' compensation claim to cover this injury until nine months after he incurred the injury.

Following denial of his workers' compensation claim, appellant filed an action in common pleas court pursuant to R.C. 4123.519. At issue was the right of appellant to receive benefits under the Workers' Compensation Act for an alleged job-related injury. The matter was tried to a jury in September 1988. The trial court made certain evidentiary and jury instruction rulings against appellant, refusing to admit certain medical records on the grounds of hearsay, refusing to allow a physician to testify as to the determinations of another physician, allowing testimony concerning appellant's collateral insurance coverage, and refusing to give the jury a broad instruction on the definition of "injury" for purposes of determining a workers' compensation claim.

Following the trial the jury returned a verdict against appellant. On October 4, 1988, by final judgment entry, the court dismissed appellant's claim. Appellant subsequently filed a motion for new trial pursuant to Civ.R. 59. The trial court overruled this motion on December 5, 1988. On January 3, 1989, appellant filed his notice of appeal challenging various evidentiary rulings made by the trial court.

## II

Appellant's first and second assignments of errors are intertwined and thus will be considered together. Appellant states:

"I. The trial Court committed prejudicial error in excluding certified hospital records pursuant to O.R.C. 2317.422 regarding plaintiff's care and treatment which were business records admissible as an exception to the hearsay rule under Rule 803(6).

"II. The Trial Court erred in excluding Dr. Aggarwal's expert medical opinion on the issue of causation."

Generally, authenticated hospital records, and the information contained therein, are admissible at trial. *Weis v. Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E.2d 245. Although potentially replete with hearsay problems, Ohio law provides for admission of such records under certain conditions. See *Stengel v. Belcher* (C.A.6, 1975), 522 F.2d 438, 443 ("Under Ohio law, a physician's diagnosis made in the course of his patient's treatment and contained in a hospital record is admissible as part of a business record.").

Unlike the cognate Federal Evidence Rule, Ohio Evid.R. 803(6) omits from its coverage the category of medical "opinions and diagnoses." Fed.Evid.R. 803(6) provides, in part:

"(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, *opinions or diagnoses* made at or near the time * * *."

However, Ohio Evid.R. 803(6) provides:

"(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

In Ohio, the admissibility of hospital records is governed by R.C. 2317.40 and its affiliated case law. This statutory provision is the counterpart of Evid.R. 803(6). As stated in 1 Ohio Evidence (1985), Section 803.75, " * * * Because Ohio Rule 803(6) omits the 'diagnosis and opinion' language of the cognate Federal Rule from which it is derived, it may be presumed that cases interpreting the resulting parallel language in R.C. § 2317.40 retain precedential value." See, also, 1 Ohio Evidence, Section 803.73.

■ R.C. 2317.40 provides, in part:

"As used in this section 'business' includes every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not.

"A record of an act, condition, or event, *in so far as relevant,* is competent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, *in the opinion of the court, the sources of information, method, and time of preparation were such as to justify admission.*" (Emphasis added.)

R.C. 2317.40 works in concert with R.C. 2317.422. Under R.C. 2317.422, hospital records are admissible, for purposes of R.C. 2317.40, if they are accompanied by a certificate attesting to their accuracy and authenticity. Thus, it is unnecessary for the custodian of those records to testify in person in court as to the authenticity of the proposed evidence. See, *e.g., State v. Spikes* (1981), 67 Ohio St.2d 405, 408, 21 O.O.3d 254, 256, 423 N.E.2d 1122, 1126.

Applying these provisions to the case at bar, we find that the trial court erred in excluding the records on hearsay grounds. R.C. 2317.40 implies that the court may exclude otherwise authenticated records if, in the opinion of the court, the source of information, method, *and* time of preparation are suspect. Thus, R.C. 2317.40 does not vest the court with absolute discretion in admitting or excluding authenticated hospital records. Rather, if proffered hospital records, authenticated pursuant to R.C. 2317.422, are not suspect as to the source of information, method, and time of preparation, the trial court should admit the evidence. The records offered by appellant fall squarely within the provisions of R.C. 2317.40 and 2317.422; there is no evidence that the information, method, or time of preparation is suspect. The records are, therefore, admissible.

Appellee did not question the authenticity of the records, the information contained in the records, the method of preparing the records or their time of preparation. Appellee basically argues that the person who prepared the records was not called by appellant, and that the records themselves lack relevance. The trial court, however, relying on *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478, 69 O.O.2d 2d 419, 320 N.E.2d 312, excluded the hospital records on the grounds that the records constituted "hearsay because it is not something that he personally perceived and it is not admitted into evidence at the hearing, so that if he were to be called personally, then he could refer to it."

■ These arguments lack merit for three reasons. First, the business exception to the hearsay rule does not require that the person producing the record be the only person who testifies to the contents of the record. If that were the case, the business records exception to the hearsay rule would not exist since virtually every business record would constitute hearsay.

■ Second, relevant evidence is defined by Evid.R. 401 as "evidence having any tendency to make the existence of any fact that is of consequence * * * more probable or less probable than it would be without the evidence." This broad definition of "relevance" means that many forms of tenuously relevant evidence are nevertheless admissible if they make the existence of any fact in question or at issue more or less probable. We cannot say that the hospital records offered by appellant lack relevance. The records describe the type of injury sustained and the methods employed to heal the injury. Thus, the records may clarify for the trier of fact the existence of the injury, explain the medical techniques used to correct it, and provide an inferential basis for its cause. The evidence was relevant.

Finally, the *Hytha* decision upon which the trial court relied in excluding the records is factually dissimilar to this case in that the issue in *Hytha* was whether a physician could testify to the contents of a letter containing not only a diagnosis, but also the physician's personal observations concerning the patient's psychological condition. The diagnosis was considered a business record of the physician making the report, not the one receiving the report. *Hytha, supra*, 40 Ohio App.2d at 486, 69 O.O.2d at 423, 320 N.E.2d at 318. The report of one physician given to another "is not a record made in the ordinary course of business of the recipient doctor." *Id.* at 490, 69 O.O.2d at 426, 320 N.E.2d at 320 (Whiteside, J., concurring).

The *Hytha* decision set out the following seven-part test for determining admissibility of hospital records: (1) the record is a systematic entry in the records of a hospital or physician, (2) the diagnosis is the result of well-known and accepted objective practices, (3) the diagnosis is not based on the subjective complaints of the patient, (4) the diagnosis was made by a qualified person, (5) the evidence is competent and relevant, (6) if the record is used to prove the truth of the matter asserted at trial, it must be the product of the party seeking its admission, and (7) the record is properly authenticated. In this case, the testifying physician would rely on standard hospital records, as opposed to a physician's personal observations, which clearly meet each element of the *Hytha* test.

Appellant's first assignment of error is well taken.

### III

Appellant's second assignment of error states:

"A. The Trial Court erred in excluding Dr. Aggarwal's medical opinion on the issue of causation.

"B. The erroneous exclusion of certified business records of the hospital adversely limited the opinion testimony of Dr. Ronald Moser."

Evid.R. 703 and 705 provide the evidentiary requirements for expert testimony. Evid.R. 703 states "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him *or admitted evidence at the hearing.*" Evid.R. 705 states "The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."

### A

### Dr. Aggarwal's Deposition Testimony

Appellant's counsel asked Dr. Aggarwal:

" * * * based upon your treatment of Charles Hunt from April of 1983 to the present, the history that you obtained from him, his complaints and the results of your examination, the course and nature of your treatment including his hospitalization at St. Elizabeth * * * whether or not you have an opinion based upon a reasonable degree of medical probability as to whether or not his pre-existing low back condition was directly and proximately substantially aggravated by his jumping up and down off the docks in December of 1985, thereby causing the conditions that you have diagnosed in this case?"

Defense counsel objected on the grounds that Dr. Aggarwal would have to base his answer, at least partially, on the reports of Dr. Duarte, the physician not called to testify. The court sustained defense counsel's objection.

We find nothing wrong in the form of question asked of Dr. Aggarwal. Appellant did not attempt to solicit Dr. Duarte's expert opinion through Dr. Aggarwal. Rather, appellant asked Dr. Aggarwal, appellant's family physician, whether he had an expert medical opinion, within a reasonable degree of probability, as to the cause of appellant's condition.

We find the trial court improperly excluded Dr. Aggarwal's testimony.

## B

### Dr. Moser's Expert Medical Testimony

Evid.R. 705 allows an expert to testify in terms of an opinion based on facts perceived by him or admitted into evidence at trial. Since the hospital records were admissible under R.C. 2317.40, they could properly form a basis for an expert's opinion on causation. The trial court erroneously excluded the records in question and unduly interfered with the ability of Dr. Moser to provide an expert opinion on appellant's injuries. The trial court's decision prejudiced the appellant.

Appellant's second assignment of error is well taken.

## IV

Appellant's third assignment of error states:

"The trial court erred in permitting testimony over plaintiff's objections regarding insurance."

It is well settled in Ohio that the collateral source rule bars evidence of benefits received from an outside source. Collateral sources include insurance payments. The basis for excluding this type of evidence is that receipt of such benefits "is deemed irrelevant and immaterial on the issue of damages, it follows, as a necessary concomitant, that not only are the benefits not to be deducted but that the receipt of such benefits is not to be admitted in evidence, or otherwise disclosed to the jury." *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 109, 52 O.O.2d 395, 397, 263 N.E.2d 235, 238.

The workers' compensation program is intended to compensate employees for injuries sustained in the performance of job-related activities. As such, the Workers' Compensation Act "is in the nature of an occupational insurance and, like benefits from other types of insurance, cannot be deducted and treated as an offset * * *." *Thiel v. Allstate Ins. Co.* (1986), 23 Ohio St.3d 108, 111–112, 23 OBR 267, 269–271, 491 N.E.2d 1121, 1123–1124. See, also, R.C. 4123.93 (amount of compensation "shall not be considered by, or called to the attention of, the jury on the trial of any action to recover damages * * * "). The collateral source rule applies to actions arising under a workers' compensation claim. *Levy v. Coon* (1964), 11 Ohio App.2d 200, 40 O.O.2d 367, 229 N.E.2d 747 (collateral source rule well settled in Ohio and applicable to workers' compensation claims).

In light of the collateral source rule, we find the trial court erred in allowing testimony concerning appellant's alternative insurance coverage. Appellee, on direct, asked the director of workers' compensation at the truck and bus plant whether appellant drew accident and disability benefits. Appellee did

not stop at this point. Rather, appellee then went on to inquire as to the differences in payment between what appellant recovered under accident and disability insurance and workers' compensation. While the court prevented testimony as to exact dollar figures between recovery under the two programs, it nevertheless allowed the witness to state that appellant would draw more money under workers' compensation than accident and disability insurance. The collateral source rule bars such testimony and its admission constitutes prejudicial error.

Finally, we find no merit in appellee's contention that this testimony was admissible as bearing on appellant's motive. *Pryor v. Webber, supra,* at paragraph four of the syllabus.

Appellant's third assignment of error is well taken.

## V

Appellant's fourth assignment of error states:

"The trial court erred in refusing plaintiff counsel's request to instruct the jury for the definition of injury in accordance with *Village v. General Motors Inc.* (1984), 15 Ohio St.3d 129."

R.C. 4123.95 requires us to construe the Workers' Compensation Act liberally in favor of an injured employee.[1] To this end, both the General Assembly and the Ohio Supreme Court liberally define an "injury" to include work-related injuries developing over time. R.C. 4123.01 defines an injury as "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). And the Ohio Supreme Court, in *Village v. General Motors Corp.* (1984), 15 Ohio St.3d 129, 15 OBR 279, 472 N.E.2d 1079, stated:

" * * * [J]udicial distinction between gradual and abrupt causation is unjustified. It frustrates the purpose of the Act, which is to compensate workers who are injured as a result of the requirements of their employment." See, also, *Ryan v. Connor* (1986), 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379.

The Ohio Jury Instructions provide that an injury may include "a physical harm that develops over time as the gradual result of the injured employee's work on the job, unexpectedly and not intended." 3 Ohio Jury Instructions (1990) 421, Section 365.05(2)(B).

---

**1.** R.C. 4123.95 provides: "Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees."

The reasoning of the Supreme Court in *Village,* combined with the clear legislative mandate that we construe the provisions of the Workers' Compensation Act liberally for the benefit of the employee, lead us to believe that the trial court erred in failing to give the requested instruction. We hold thus for two reasons.

First, in *Village,* the Supreme Court reversed a trend in judicial application of the workers' compensation provisions requiring that the employee show the injuries sustained resulted from a sudden, almost traumatic, impact. In *Village,* the court extended workers' compensation coverage under the gradual injury theory to a person whose injury developed over a period of five days. The court reversed its earlier decision in *Bowman v. National Graphics Corp.* (1978), 55 Ohio St.2d 222, 9 O.O.3d 159, 378 N.E.2d 1056, on the grounds that the legislative intent of R.C. 4123.01(C) clearly mandated that gradual injuries be covered. *Village, supra,* at 132, 15 OBR at 281, 472 N.E.2d at 1081.

■ In this case, the trial court refused to give the "gradual" instruction, reasoning that "gradual" meant an injury developing over months or years. Yet, as stated above, the Supreme Court, in *Village,* applied the gradual injury definition for an injury developing over a period of five days. Clearly then, gradual injury does not mean months or years under the terms of *Village.*

Second, Ohio law clearly requires that a trial court give a requested instruction if it is a "correct statement of law applicable to issues and evidence in the case and are not otherwise prejudicial." *Martin v. Dayton Power & Light Co.* (1958), 107 Ohio App. 19, 20, 7 O.O.2d 347, 347, 156 N.E.2d 328, 330. A judge may refuse to give a requested jury instruction "only when such charges *unduly* emphasize one side of the case that they may be refused as prejudicial on that ground, even though they are technically correct and pertinent statements of law." *Id.* at 20–21, 7 O.O.2d at 347–348, 156 N.E.2d at 330.

The trial court apparently refused to give the instruction because of its interpretation of "gradual injury," not because of its prejudicial nature. Since nothing in the record demonstrates prejudice, and the requested instruction was a correct statement of law and applicable to the issues and evidence under the *Village* holding, we find the trial court erred in failing to give the requested instruction.

## VI

### Conclusion

We need not address appellant's fifth assignment of error since we find, as to the previous four assignments, the trial court committed prejudicial error.

For the reasons stated above, we reverse the decision of the trial court and remand this case for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WOLFF, P.J., and BROGAN, J., concur.

ROBERT P. RINGLAND, J., of the Clermont County Court of Common Pleas, sitting by assignment.