[Cite as *State v. Miller*, 2012-Ohio-211.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

STATE OF OHIO                                     :
                                                  :        Appellate Case No. 09-CA-74
            Plaintiff-Appellee                    :
                                                  :        Trial Court Case No. 09-CRB-649
v.                                                :
                                                  :
NANCY A. MILLER                                   :        (Criminal Appeal from
                                                  :         Xenia Municipal Court)
            Defendant-Appellant        :
                                                  :
                        . . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of January, 2012.

. . . . . . . . . . .

RONALD C. LEWIS, Atty. Reg. #0061980, Xenia County Municipal Prosecutor's Office, 101
North Detroit Street, Xenia, Ohio 45385
            Attorney for Plaintiff-Appellee

NANCY A. MILLER, 510 North Stadium Drive, Xenia, Ohio 45385
            Appellant, *pro se*

. . . . . . . . . . . . .

HALL, J.

{¶ 1} After her collie bit her neighbor Keith Bradley, appellant Nancy Miller was

charged with the minor misdemeanor offense of failing to confine a dog.  Miller represented

herself at a bench trial in Xenia Municipal Court. She and Bradley testified, giving conflicting versions of the events leading to the bite. The court believed Bradley's version and found Miller guilty, fining her $75.

{¶ 2} Miller appealed and now assigns four errors to the municipal-court proceedings. First, she alleges that her conviction is against the manifest weight of the evidence. Second, Miller alleges that the trial court failed to order the separation of witnesses sua sponte. Third, she alleges that the court participated in ex parte communications. And fourth, Miller alleges that the court failed to include in the trial-court record the hospital report and records concerning treatment of the bite. Concluding that no merit exists in any of these allegations, we affirm.

## A. Weight of the Evidence

{¶ 3} The trial court concluded that Miller was guilty of violating R.C. 955.22(C)(1) because it found that she failed to keep her collie on her property.[1] Miller contends that the weight of the evidence does not support this finding. When reviewing the weight of the evidence, "the appellate court sits as a 'thirteenth juror'" and examines "the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In its examination, the appellate court may consider a witness's credibility. *See id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). But the court must remember that the fact finder "is best able to view the witnesses and observe their

---

[1] "(C) Except when a dog is lawfully engaged in hunting and accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of any dog shall fail at any time to do either of the following:

(1) Keep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape." R.C. 955.22.

demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). For this reason, "while * * * in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct." *Id*. at 79-80. Miller contends that the court should not have believed Bradley's testimony that the collie reached onto his property to bite him. But Miller fails to overcome the presumption that the trial court's finding was correct.

{¶ 4} Miller does not dispute that her collie bit Bradley while he was mowing his lawn near the 3-and-a-half-foot chain-link fence that divides their properties. What she disputes is on which side of the fence Bradley was bitten. Miller testified that she saw the whole thing: Bradley reached over the fence and tried to backhand the collie's head and the collie bit him. But Bradley testified that he was mowing the lawn and all of a sudden there was a dog latched to his forearm. According to Bradley, the collie was stretched out about 42 inches with its hind paws in the fence, near the top. He said that it wasn't until he swung his arm towards Miller's property that the dog finally let go. The collie left a scratch or bite that was about an inch-and-a-quarter long, and Bradley sought treatment in Greene Memorial Hospital's emergency room.

{¶ 5} A county animal-control officer also testified. He arrived shortly after the bite occurred and talked with both Bradley and Miller. The officer testified that Bradley's trial testimony was consistent with what Bradley told him that day. And it was the officer's opinion

that Bradley's explanation of how he was bitten is plausible. Regarding his conversation with Miller, the officer said that at first she told him that she did not see the whole incident but later told him that she did: "You [referring to Miller, who was cross examining him] stated you walked out, you looked out as you saw your dog fly back through the yard; and in further discussion with you then, you explained you saw the whole incident." (Tr. 17).

{¶ 6} The trial court said that it believed the animal-control officer's testimony, and the court found that Miller had changed her story while Bradley's story remained the same. The court said that it found Miller's testimony concerning the material facts not credible. Instead, the court found that the facts were as Bradley had described them.

{¶ 7} Miller contends that Bradley's testimony is not credible. She first asserts that it was simply not physically possible that the collie, hind paws near the top of the fence, was stretched out 3-and-a-half feet. According to Miller, her collie would have fallen flat. But no testimony, or other evidence, was presented that supports this assertion. Rather, the animal-control officer's testimony supporting the plausibility of Bradley's explanation is evidence (however slight) against it. Miller also asserts that if Bradley did swing his arm to push the collie back over the fence while its muzzle was wrapped around his forearm, Bradley would have suffered more than a superficial scratch. Miller has a point. But, again, no evidence supports her assertion, and the animal-control officer's plausibility opinion is against it.

{¶ 8} While the evidence suggests that Miller has changed her story, Bradley's version of the events has remained the same. Not only does it match what he told the animal-control officer but it also matches what he told the responding police officer, whose report is in the

record, and matches the statement that Bradley wrote out for the animal-control officer, which is also in the record. Given this evidence, we cannot say that the trial court was wrong to believe Bradley.

{¶ 9} The first assignment of error is overruled.

## B. Separation of Witnesses

{¶ 10} Miller says that she did not realize that the animal-control officer was sitting at the back of the courtroom and that it was her impression that separation of witnesses was required. The trial court, Miller alleges in the second assignment of error, should have excluded the officer sua sponte so that he could not hear her and Bradley's testimony.[2] We disagree.

{¶ 11} "The purpose of a separation order is 'so that [witnesses] cannot hear the testimony of other witnesses,' Evid.R. 615, and tailor their own testimony accordingly." *State v. Waddy*, 63 Ohio St.3d 424, 434, 588 N.E.2d 819 (1992). A trial court must order the separation of witnesses if a party requests it. Evid.R. 615(A) (providing that "at the request of a party the court shall order witnesses excluded"). The court may also order separation of witnesses sua sponte. *Id.* (providing also that the court "may make the [separation] order of its own motion"). Miller never asked for a separation order. And she offers no reason why, in this case, the trial court should have made an order sua sponte. She does not claim that the animal-control officer tailored his testimony to Bradley's, let alone say what might have

---

[2] The concern here can be only that the officer heard Bradley's testimony. The officer was the second witness to testify, after Bradley, and before Miller herself. When the officer's examination was finished, the prosecutor indicated that he would be available to testify later, and the officer was excused. The officer did not testify again, and it is not clear whether he left the courtroom or remained. If he remained, Miller, having been made aware of his presence, should have asked the court to exclude him during her testimony.

motivated the officer to do so. Therefore we find no error.

{¶ 12} The second assignment of error is overruled.

## C. Ex parte Communications

{¶ 13} Miller contends, in the third assignment of error, that the trial court had ex parte communications with a victim's advocate.[3] We disagree.

{¶ 14} The communication that Miller points to is an April 20, 2009 memorandum from the advocate to the trial court. In it, the advocate says that she spoke with Bradley and Bradley told her that he believed that his insurance would cover his medical expenses and that he would not pay a co-payment. The advocate says that no restitution is requested. Also, the advocate says that Bradley wanted the court to know that, contrary to Miller's allegation, he did not hit the collie. The dog barks often, Bradley told the advocate, and he just ignores it. Although Miller does not refer to it, the record contains another memo from the victim's advocate to the judge dated June 9, 2009. This memo has copies of Bradley's medical bills attached, and in it the advocate says that Bradley requests restitution of $195.94, the bills' total.

{¶ 15} It is unclear why these memos were sent. The state says that the memos are victim-impact statements that were prepared for the court in the event that Miller pleaded guilty or no contest. But since Miller was charged with a minor misdemeanor, the court could not have ordered her to pay restitution. *See Beavercreek v. Ride*, 2d Dist. Greene App. No. 06CA0082, 2007-Ohio-6898, ¶ 46 ("R.C. 2929.28(A)(1) provides that the court may not

---

[3]While Miller refers to the advocate as court appointed, the state says that the advocate was not appointed but works in the prosecutor's office.

impose restitution as a sanction when the offense is a minor misdemeanor."). If the memos were intended to persuade the judge to impose a higher fine, they evidently failed to do so. While the court could have fined Miller up to $150, *see id*., citing R.C. 2929.28(A)(2)(a)(v), it actually fined her only $75. There is no evidence that the trial court read or relied on the memos–which is not surprising given their irrelevance in this case.

{¶ 16} The third assignment of error is overruled.

## D. Bradley's Hospital Report and Records

{¶ 17} During the trial, Miller subpoenaed and the court was faxed a copy of the hospital's report and records for Bradley's emergency-room visit. The court gave Miller time to review them and allowed her to use them to question Bradley. When questioning was finished, the court asked Miller to give her copies to the bailiff so that he could give them to Bradley. The report and records were not admitted as evidence nor otherwise incorporated into the record. After she filed her appeal, Miller filed a motion with this Court, claiming that the hospital report and records were missing from the trial-court record and requesting leave to supplement the record with them. We overruled the motion, advising Miller to ask the trial court to supplement the record, which she did. After a hearing, the trial court denied Miller's request, finding that the report and records were never made a part of the trial record. The court found that, while Miller had subpoenaed them and used them to examine Bradley, the report and records were never marked or proffered as an exhibit.

{¶ 18} Miller contends, in the fourth assignment of error, that the trial court should have included the hospital report and records in the trial-court record. She also seems to contend that she was entitled to a copy of them. We disagree with both contentions.

{¶ 19} "The admission of evidence is within the discretion of the trial court. * * * Thus the court's decision will be reversed only upon a showing of an abuse of discretion." (Citations omitted.) *Banford v. Aldrich Chem. Co., Inc.*, 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶ 38. There are a couple reasons why, by excluding the hospital records, the trial court did not abuse its discretion. The first one is simply that Miller never asked that they be admitted into evidence or be made a part of the record. Even if she had, the court would have excluded them because they were not authenticated. To be admissible, hospital records must be authenticated. *See Hunt v. Mayfield*, 65 Ohio App.3d 349, 352, 583 N.E.2d 1349 (1989); Evid.R. 901(A). This may be done either by "call[ing] the custodian, person who made such records, or person under whose supervision they were made, as a witness" or by any such person's endorsing on the records "the person's verified certification identifying such records, giving the mode and time of their preparation, and stating that they were prepared in the usual course of the business of the institution." R.C. 2317.422(A). Neither was done in this case. So lacking authentication, Bradley's hospital records could not have been admitted into evidence. *See Bzdafka v. Bretz*, 8th Dist. Cuyahoga App. No. 95840, 2011-Ohio-3982, ¶ 17. Miller offers no other reason that they should have been included in the record.

{¶ 20} Miller argues that she is entitled to a copy of the report and records because, since she subpoenaed them and used them to question Bradley, they are public documents. Miller says that, by not giving her a copy, the court violated R.C. 149.351. This provision of Ohio's public-records law generally prohibits the damage or disposal (with some exceptions) of public records, R.C. 149.351(A), which includes documents, R.C. 149.011(G). While this

provision grants any aggrieved person a right of action for injunctive relief or to recover a forfeiture, R.C. 149.351(B), it does not grant such person a right to the document. And even if it did, Bradley's hospital report and records are likely not public documents. R.C. 149.011(G).[4] Miller cites no other reason why she was entitled to retain a copy of Bradley's hospital report and records.

{¶ 21} The fourth assignment of error is overruled.

{¶ 22} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.


Copies mailed to:

Ronald C. Lewis
Nancy A. Miller
Hon. Michael K. Murry

---

[4]The term "records," as defined in R.C. 149.011(G), pertinently "includes any document * * *, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." While the court is a "public office," see R.C. 149.011(A) and (B), the hospital report and records do not document the court's activities.